IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

STEVEN NICHOLS,                           )
                                          )
            Plaintiff,                    )     TC-MD 220152R
                                          )
      v.                                  )
                                          )
CURRY COUNTY ASSESSOR,                    )
                                          )
            Defendant.                    )     **DECISION**

Plaintiff appealed a Board of Property Tax Appeals (BOPTA) Real Property Order, dated March 3, 2022, regarding Account R11181 (subject property), for the 2021-22 tax year. A trial was held remotely via WebEx on November 1, 2022. Plaintiff, Steven Nichols, appeared and testified on his own behalf. Curry County Appraiser, Lacey Young, appeared on behalf of Defendant. Curry County Assessor, Jim Kolen, testified as a witness on behalf of Defendant. Plaintiff's exhibits 1 to 14 were admitted without objection. The court sustained Plaintiff's objection to the admission of Defendant's exhibits A to E, due to improper service of process.

## I. STATEMENT OF FACTS

The subject property is a 1.1-acre lot, located on Highway 101 in Sixes, Oregon that has formerly been used both for commercial and residential purposes. (Ptf's Ex 1 at 1; Ptf's Ex 14.) At trial, Plaintiff testified that he believes he purchased the subject property in 2003 for $28,000, and that it is zoned "rural-commercial." On March 3, 2022, BOPTA mailed Plaintiff a Real Property Order sustaining Defendant's real market value (RMV) and assessed values for the 2021-22 tax year at $499,990 and $236,920, respectively. (Compl at 2.)

At trial, Plaintiff testified that years before he purchased the subject property, it was the site of an operational gas station—the Sixes gas station. Plaintiff further testified that, at some

point before purchasing the property, one of the gas station's underground storage tanks leaked, resulting in the contamination of the subject property's soil between 4.5 and 5.5 feet beneath the surface. As evidence of the contamination, Plaintiff submitted a report prepared by the Oregon Department of Environmental Quality (ODEQ) in April of 2002, which detected 2,220 parts per million (PPM) of gas and 302 PPM of diesel in soil samples taken from depths between 4.5 and 5.5 feet beneath the surface of the subject property. (Ptf's Ex 1.) In his case-in-chief, Plaintiff argued that, as a result of the contamination, the RMV of the subject property is $499,990, Defendant's tax roll value, lessened by the cost to conduct an investigation into the scope of the contamination and the costs to cure the contamination. Plaintiff estimates that these costs would result in an RMV of approximately $405,857 (rounded).

In his estimation, Plaintiff first allots $55,032 toward the cost to conduct an investigation into the scope of the contamination, because to Plaintiff's own admission, it is uncertain if the 2002 ODEQ report still accurately reflects the present condition of the property. In support of this expense amount, Plaintiff submitted a third-party cost estimate to conduct the investigation, dated October 19, 2022, provided by Rick Young Seidemann of RYS Environmental LLC. (*See* Ptf's Ex 11.) Second, Plaintiff testified that because the contamination is at a depth of 4.5 to 5.5 feet beneath the surface, he also factored in an expense of $34,811 (rounded) to excavate the contaminated soil. In support of this figure, Plaintiff submitted as evidence, documentation of a third-party estimate that he received via email from Rick Coleman of Koos Environmental on March 12, 2018, to conduct the excavation. (*See* Ptf's Ex 5 at 1.) In addition, Plaintiff estimated that replacing the contaminated soils would cost approximately $3,000. (Ptf's Ex 6.) However, Plaintiff submitted no evidence in support of how he reached this figure—a figure that he

testified to calculating himself.[1]  Finally, in his testimony, Plaintiff appeared to express an intention to include what he referred to as ODEQ "oversight costs" in his estimate of the cost to cure, referencing numerous ODEQ invoices, the most recent dated April 23, 2022, with a balance due of $1,290 (rounded).  (*See* Ptf's Ex 9; *see also* Ptf's Ex 10.)

Jim Kolen, Curry County Assessor, testified that the RMV of $499,990 on Defendant's tax roll, affirmed by the Board in its Real Property Order, is supported by comparable sales that take the contamination issue associated with Plaintiff's property into account.

## II.  ANALYSIS

The issue is the subject property's RMV for the 2021-22 tax year.  RMV is "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."  ORS 308.205(1).[2]  The assessment date for the 2021-22 tax year is January 1, 2021.  *See* ORS 208.007; ORS 308.210.  The RMV of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]"  ORS 308.205(2).  RMV is determined using three methods: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach.  OAR 150-308-0240(2)(a); *see also Allen v. Dept. Of Rev.*, 17 OTR 248, 252 (2003).  Although all three approaches must be considered, all three approaches may not be applicable in a given case.  *Id.*

/ / /

---

[1] The court notes that while, at trial, Plaintiff requested that his property's RMV be reduced both by Rick Coleman's $34,811 (rounded) estimate and by an additional $3,000 to replace the excavated soil, Plaintiff's exhibit 5 (Coleman's estimate), appears to indicate that it includes the cost of replacing the excavated soil.  (*See* Ptf's Ex 5 at 1 ("If you can deliver and grade 100 yards of crushed rock as backfill, please include in quote as well").)  Despite this discrepancy, the court continues its analysis considering both requests as nonduplicative.

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2019.

As the party seeking affirmative relief, Plaintiff bears the burden of proof and must establish his case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the RMV of their property." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

Plaintiff argues that his property's RMV was effectively reduced by approximately $100,000, based on the gas and diesel contamination. As evidence, Plaintiff relies upon: (1) a third-party quote to investigate the condition of the property; (2) numerous third-party quotes to cure the property, albeit some, if not all, are based on Plaintiff's own description of the condition of the property and upon a twenty-year-old report, which Plaintiff concedes cannot be accurately relied upon to determine the current condition of the property; and (3) on the twenty-year-old report itself.

This case bears many similarities to *Covington v. Multnomah County Assessor*, TC-MD 180158R, WL 1514978 (Or Tax M Div, Apr 8, 2019). In *Covington*, taxpayers appealed a BOPTA Real Property Order, arguing their RMV should be reduced by $100,000 because two homes were constructed in front of their property, resulting in the loss of their city view. *Id*. at *1. The only evidence that taxpayers presented was a letter written by a realtor in their neighborhood, stating that the view was worth $100,000. *Id*. at *3. The court gave little weight to the realtor's statement, noting that "even if the court were to accept the $100,000 reduction in value based on [taxpayers'] loss of their view, the court would still have to determine what value

that should be reduced from[,]" referring to the RMV. *Id*. The court found that while taxpayers' argument that the reduction in view value should be reduced from their RMV, "that theory does not match the laws and rules of valuation in this state[,]" and taxpayers failed to implement one of the three approaches described in OAR 150-308-0240(2)(a). *Id*. Here, the same can be stated. That is, Plaintiff's evidence is to be given little weight for reasons discussed above, and even if the court were to accept Plaintiff's evidence as true, his evidence does not comport to one of the three approaches used to determine RMV.

In the Regular Division, *Covington* relied on the same legal theory as presented in the Magistrate Division. *See Covington v. Multnomah Cty. Assessor*, 24 OTR 77 (2020). The court opined that had the assessor and taxpayers agreed on a starting point to consider reductions for loss of view, the court could potentially determine the amount of a reduction, if any, from there. *Id*. at 80. However, no such stipulation was made—nor was one made in the case at hand. *Id*. Without such a formal stipulation, the court must decide the issue of RMV "*de novo*," meaning "anew." *Id*; *see also* ORS 305.425(1) ("[a]ll proceedings before the judge of the tax court shall be original, independent proceedings and shall be tried without a jury and de novo.") "**[T]he court is not bound by the value shown on the assessment roll and on a taxpayer's bill**." *Id*. (emphasis added). The court found that by starting with the county RMV and providing only evidence of diminishment of the property, that Covington failed to carry his burden of proof as to the value of the subject property. *Id*. Like the result in *Covington*, Plaintiff seeks to start with the county RMV and provided only limited evidence of diminishment of the value of the subject property. Plaintiff's theory does not match the law in this state.

"[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties."

ORS 305.412. In this case, Defendant presented no evidence contradicting, or even bolstering, the BOPTA value. Defendant merely presented brief testimony that it relied upon the comparable sales approach and that while searching for comparable sales, it did take the contamination issue into account. Defendant did not provide persuasive evidence for the court to modify the real market value found in the BOPTA Order.

## III. CONCLUSION

Upon careful consideration, the court finds that neither party presented evidence to meet their respective burden of proof. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied. The BOPTA real market value of Account R11181 remains at $499,990.

Dated this _____ day of November 2022.

_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Richard Davis and entered on November 22, 2022.*